UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LARRY THOMAS,

    Plaintiff,

v.                                                    Case No. 6:23-cv-1937-JSS-EJK

JEREMIAH VONTRELL MOORE,
et al.,

    Defendants.
_____/

## ORDER

THIS MATTER is before the Court on the Motion to Dismiss (Dkt. 54) filed by Defendants Nurse Janine Board and Dr. Jackie Wayne Westfall.[1] Plaintiff filed a Response (Dkt. 64) in opposition to the Motion to Dismiss.

## BACKGROUND[2]

Plaintiff filed a Second Amended Complaint for Civil Rights Relief ("Second Amended Complaint, Dkt. 51) under 42 U.S.C. § 1983. The Second Amended Complaint concerns events that occurred at the Tomoka Correctional Institution ("Tomoka").

---

[1] The Motion to Dismiss (Dkt. 41) filed by the Florida Department of Corrections also remains pending; however, the Florida Department of Corrections is not a party to the Second Amended Complaint, and the Motion to Dismiss (Dkt. 41) will be denied as moot.

[2] The following statement of facts is derived from Plaintiff's Second Amended Complaint (Dkt. 38), the allegations of which this court must take as true in ruling on a motion to dismiss. *See Thaeter v. Palm Beach Cty. Sheriff's Office,* 449 F.3d 1342, 1352 (11th Cir. 2006).

Plaintiff has sued Defendants Jeremiah Vontrell Moore, Jamie Christopher Pollaro, Christopher Blasberg, John Doe, Janine Bogard, and Jackie Westfall. Plaintiff alleges that Moore, Pollaro, Blasberg, and Doe were correctional officers at Tomoka; that Bogard was a licensed practical nurse at Tomoka; and that Westfall was a physician providing medical care to prisoners at Tomoka. (Dkt. 51 at 2-3). Defendants Moore, Blasberg, Doe, and Pollaro filed Answers (Dkts. 59, 66, 67, 68) to the Second Amended Complaint.

On July 30, 2020, Moore "was escorting confinement inmates for showers at Tomoka" and "passed by Plaintiff's cell without offering him a shower." (Dkt. 51 ¶¶ 9, 10.) Plaintiff asked Moore if he could shower. (*Id.* ¶ 11.) Moore did not answer Plaintiff; instead, Moore "initiated a heated verbal exchange with Plaintiff in which expletives were used." (*Id.* ¶¶ 12, 13.) A physical altercation ensued between Moore and Plaintiff, and Moore grabbed Plaintiff and "slammed him down to the ground with great force, causing a fracture of his right hip." (*Id.* ¶ 18.)

Plaintiff alleges, Pollaro responded to the area, observed the altercation, but did not intervene. (*Id.* ¶ 20.) Blasberg and Doe also responded to the scene. (Dkt. 51 ¶ 22.) Despite Plaintiff's complaints of pain, the correctional officers failed to take Plaintiff for medical care and instead "dragged [him] to the showers, causing further pain and injury." (*Id.* ¶¶ 21–24.). Defendants then took Plaintiff to the infirmary where he was seen by Bogard "more than thirty minutes after his injury." (*Id.* ¶ 25.) Bogard provided Plaintiff with a leg brace and ibuprofen, told Plaintiff "he was not hurt," and sent Plaintiff back to a confinement cell. (*Id.* ¶ 26.)

At about 6:00 a.m. the next morning, Bogard came into Plaintiff's cell and "recognized that there was a real injury and that there was a differential diagnosis of a hip fracture" but denied Plaintiff's requests for further treatment. (*Id.* ¶ 29.) At about 12:00 p.m. that same day, Westfall examined Plaintiff and sent him to the hospital. (Dkt. 51 ¶ 30.) Plaintiff alleges that "there was [] further unnecessary delay for no good medical reason" since the ambulance did not arrive "until around 3pm[.]" (*Id.*).

At the hospital, Plaintiff "was diagnosed with a right acute significantly displaced and angulated comminuted and impacted peritrochanteric femur fracture with prominent deep intramuscular soft tissue swelling." (*Id.* ¶ 31.) At approximately 4:30 p.m. that same day, Plaintiff underwent a two and half hour surgery to treat the fracture. (*Id.* ¶ 31.)

Plaintiff returned to Tomoka's infirmary on August 3, 2020, and was seen by Westfall. (*Id.* ¶ 32.) The orthopedic surgeon who performed the surgery provided Plaintiff with a "written script," which required physical therapy. (*Id.* ¶ 33.) Plaintiff was in the infirmary until August 31, 2020; however, he never received physical therapy despite his requests. (*Id.* ¶¶ 34–35.) Plaintiff was discharged to a confinement cell that "lacked ADA compliant bars," and Westfall refused to order further post-operative care or physical therapy. (*Id.* ¶ 35.)

## APPLICABLE STANDARDS

A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, courts

3

must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). In the case of a *pro se* litigant, courts should construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

## ANALYSIS

### A.   Claims Against Defendants Bogard and Westfall

The Second Amended Complaint contains eight counts brought under 42 U.S.C. § 1983. (Dkt. 51.) In Count VII, Plaintiff asserts a claim against Bogard in her individual capacity. (*Id.* ¶¶ 6, 70–76.) Furthermore, in Count VIII, Plaintiff asserts a claim against Westfall, which will be construed as a claim against him in his individual capacity.³ (*Id.* ¶¶ 77–83.)

Plaintiff alleges that Bogard's actions constituted deliberate indifference to his

---

³ Plaintiff did not allege in which capacity Westfall was being sued. "When it is not clear in which capacity the defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be imposed." *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). The court concludes that an individual capacity lawsuit against Westfall is appropriate. First, Plaintiff seeks punitive damages from Westfall, which are only available in § 1983 actions from government officials when sued in their individual capacities. *See Adams v. Franklin*, 111 F. Supp. 2d 1255, 1262 (M.D. Ala. 2000). Next, Plaintiff expressed his intent to sue the other individual defendants in their individual capacities. Finally, Westfall did not raise any official capacity defenses in the Motion to Dismiss.

serious medical needs in violation of his Eighth Amendment rights. (Dkt. 51 ¶ 72.) He alleges that his medical needs were objectively serious "in that his leg and hip fracture injury obviously warranted a physician's attention and posed a substantial risk of serious harm if left unattended" and that the delay in diagnosis and medical treatment posed a substantial risk of serious harm. (*Id.* ¶ 73.) According to Plaintiff, Bogard was deliberately indifferent to the risk of serious harm "in that she delayed the diagnosis and treatment of his fracture despite Plaintiff's excruciating pain, swelling and inability to walk." (*Id.* ¶ 75.)

Plaintiff alleges that Westfall's actions constituted deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. (*Id.* ¶ 79.) He alleges that his medical needs were objectively serious because he had been "diagnosed with and undergone extensive surgery for a complicated fracture injury and physical therapy was prescribed. The failure to provide proper post operative medical treatment including physical therapy posed a substantial risk of serious harm . . . ." (*Id.* ¶ 80.) According to Plaintiff, Westfall was deliberately indifferent to the risk of serious harm "in that he failed to refer Plaintiff for the prescribed treatment of his fracture by physical therapy despite Plaintiff's continued pain, swelling and inability to walk and his numerous requests for such therapy." (*Id.* ¶ 82.)

  **B.** **Deliberate Indifference Standard**

The Eighth Amendment forbids the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and

wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation and quotation omitted).  "To establish an Eighth Amendment violation, a plaintiff must show: (1) a serious medical need; (2) a defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Rutledge v. Alabama*, 724 F. App'x 731, 735 (11th Cir. 2018) (citation and quotation omitted).

To establish a deliberate indifference claim, a plaintiff must make both an objective and a subjective showing. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the objective component, the plaintiff must demonstrate an objectively serious medical need. *Clark v. Sheffield*, 807 F. App'x 910, 915 (11th Cir. 2020). Under the subjective component, the plaintiff must show the defendant acted with deliberate indifference towards that need as follows: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that amounted to more than mere negligence. *Id*. "Violations of the Eighth Amendment occur only when the course of treatment, or lack thereof, is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. (quotation and citation omitted).

Delayed medical treatment can rise to the level of deliberate indifference when: (1) "it is apparent that delay would detrimentally exacerbate the medical problem"; (2) the delay actually seriously exacerbates the problem; and (3) "the delay is medically unjustified." *Taylor v. Adams*, 221 F.3d 1254, 1259-60 (11th Cir. 2000) (quotations and citation omitted).  In determining whether a delay in treatment rises to the level of

6

deliberate indifference, relevant factors include: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). Whether a delay in receiving treatment worsened an individual's condition overlaps with the causation inquiry. *Id*. at 1329. A plaintiff must show that the delay attributable to the defendant's indifference likely caused the plaintiff's injury. *Id*. A prisoner must provide "verif[ied] medical evidence . . . to establish the detrimental effect of delay in medical treatment." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002).

### C. Discussion

Here, the allegations of Bogard's unjustifiable delay in providing medical treatment and Westfall's failure to provide proper post-operative medical treatment sufficiently plead deliberate indifference. First, Plaintiff alleges facts plausibly suggesting that Bogard acted with deliberate indifference to his serious medical needs. Plaintiff's allegations show he had an objectively serious medical need, that Bogard had subjective knowledge of a risk of serious harm, that she disregarded that risk by delaying treatment, and that her conduct was more than mere negligence. In this way, Plaintiff has alleged deliberate indifference by Bogard.

Next, Plaintiff alleges facts plausibly suggesting that Westfall acted with deliberate indifference to his serious medical needs. Plaintiff's allegations show he had an objectively serious medical need, that Westfall had subjective knowledge of a risk of serious harm, that he disregarded that risk by failing to provide proper post-

7

operative medical treatment, and that his conduct was more than mere negligence. In this way, Plaintiff has alleged deliberate indifference by Westfall. Consequently, Defendants' Motion to Dismiss (Dkt. 54) will be denied.

## CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion to Dismiss (Dkt. 54) filed by Defendants Nurse Janine Board and Dr. Jackie Wayne Westfall is **DENIED**. Within twenty-one days from the date of this Order, Defendants Nurse Janine Board and Dr. Jackie Wayne Westfall shall file an Answer to the Second Amended Complaint.

2. The Motion to Dismiss (Dkt. 41) filed by Florida Department of Corrections is **DENIED** as moot.

**ORDERED** in Orlando, Florida on May 28, 2024.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record