UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LARRY THOMAS,

    Plaintiff,

v.                                                  Case No: 6:23-cv-1937-JSS-UAM

JEREMIAH VONTRELL MOORE,

    Defendant.
_____/

## ORDER

Defendant moves for summary judgment. (Dkt. 132.) Plaintiff opposes the motion. (Dkt. 142.) Upon consideration, for the reasons outlined below, the court grants the motion in part and denies it in part.

## BACKGROUND

Plaintiff sues Defendant in connection with events that transpired at Tomoka Correctional Institution on July 30, 2020, when Plaintiff was an inmate and Defendant was a correctional officer. (Dkt. 51.) Plaintiff filed an informal grievance in which he described the events. (Dkt. 122-5.) According to Plaintiff, the parties engaged in a verbal altercation after Defendant passed by Plaintiff's cell while escorting inmates to the showers. (*Id*. at 2.) Plaintiff stated that Defendant "intentionally skipped [Plaintiff's] cell for [a] shower," (*id*.), and that after the verbal altercation, without an escort or backup duty officer, Defendant used his radio to call for Plaintiff's cell door to be opened, (*id*. at 3). Plaintiff reported that Defendant did not place him in restraints

and that he felt threatened and "pushed his way out of the cell" so that the imminent interaction would not be "off camera." (*Id*.) According to Plaintiff, the parties "tussled" in a physical altercation, and Defendant "brutally slammed" Plaintiff to the floor, injuring Plaintiff's hip. (*Id*.) Plaintiff did not mention in the informal grievance any delay in receiving medical treatment after his injury. (*See id. passim*.)

At his deposition, Plaintiff testified that Defendant was alone when approaching Plaintiff's cell. (Dkt. 122-7 at 14.) Plaintiff stated that after his cell door opened, he felt that his life was in danger, and he exited the cell so he would be "on camera, where [he] felt safer." (*Id*. at 14–15.) In describing the physical altercation with Defendant, Plaintiff noted that Defendant punched him in the head, stomach, and rib areas and "maliciously . . . pile[drove him] into the ground." (*Id*. at 15.) At various times in his deposition, Plaintiff could not recall when other officers arrived on the scene, but he eventually stated that they arrived within a few minutes after the physical altercation began. (*Id*. at 15, 94–96.) Plaintiff could not recall how many officers arrived—"[f]ive, six, maybe"—and he did not recognize the names or faces of any responding officers. (*Id*. at 96.)

Plaintiff also testified that a nurse saw him the night of the incident and the next morning, (*id*. at 100, 102–03, 108–12), and that a doctor also saw him that next morning, (*id*. at 102–03, 112–14). Plaintiff did not recall at what time or how soon he first received medical attention after the incident. (*Id*. at 105.) Plaintiff testified that the nurse examined him the night of the incident and gave him Tylenol or something

similar. (*Id*. at 106–08.) Plaintiff did not know if the nurse referred his case to the doctor the night of the incident. (*Id*. at 107.) Plaintiff stated that although the nurse did not notice any physical injury during her initial examination of him, she realized the next morning that he had a physical injury and accordingly provided him with a leg brace. (*Id*. at 109–11.) According to Plaintiff, later that morning, the doctor recommended that Plaintiff be sent to "outside [the] medical [unit] for treatment," and within a few hours, Plaintiff was sent to a hospital. (*Id*. at 114.)

Captain Robert Brooks testified at a deposition that he worked at the prison on July 30, 2020. (Dkt. 122-11 at 6.) About the incident, he stated that he arrived on the scene afterwards, had been told "there had been a physical interaction involving use of force," and implemented the prison's use-of-force procedures. (*Id*. at 6–7.) He testified that when he arrived, Plaintiff was in the shower. (*Id*. at 7.) Captain Brooks stated that he reviewed video footage of the incident and, based on that review, found that Defendant had asked for Plaintiff's cell door to be opened. (*Id*. at 8.) According to Captain Brooks, Defendant was the only officer present when the door was opened, and Defendant violated various jail rules and procedures by requesting that the cell door be opened without restraining Plaintiff and without having another officer present. (*Id*.) Captain Brooks corroborated that a physical altercation ensued and that Defendant caused Plaintiff to land on the floor. (*Id*. at 8–9.) After the incident, Captain Brooks stated, Plaintiff was placed in restraints and escorted to a shower

facility because "[a]fter any type of use of force, the inmates [involved] are secured in a secure area." (*Id.* at 30.)

Captain Brooks further testified that he and "somebody else escorted [Plaintiff] out of the shower [facility] and tried to walk him to [the] medical [unit]." (*Id.* at 31.) According to Captain Brooks, Plaintiff claimed to be unable to walk, so Plaintiff was "assisted into a wheelchair and escorted to [the] medical [unit]." (*Id.*) Captain Brooks could not recall the other officer assisting but recalled that the wheelchair arrived after about three to five minutes. (*Id.* at 31–32.) Captain Brooks stated that he and other officers did everything they could to transport Plaintiff to the medical unit as quickly as possible and that there was nothing any officer, apart from Defendant, could have done to prevent or stop the use of force from occurring. (*Id.* at 41.) During his deposition, Captain Brooks shared his conclusions that Defendant violated policy by retaliating against Plaintiff because of what Plaintiff said, that "improper force was utilized," and that the use of force could have been avoided. (*Id.* at 7, 36.)

Officer Jamie Christopher Pollaro stated in an affidavit that he arrived at the scene after Plaintiff was already on the ground and that he assisted Defendant by placing wrist restraints on Plaintiff and securing Plaintiff's legs. (Dkt. 122-14 ¶ 9.) According to Officer Pollaro, "[a]fter [Plaintiff] was restrained, several other officers responded to the scene and assisted . . . in bringing [Plaintiff] to the showers where [Plaintiff] could be fully secured." (*Id.* ¶ 11.) Officer Pollaro stated that he exited the

area after Plaintiff was secure in the shower facility, which is standard practice "so [as] to de-escalate" after a use-of-force event. (*Id.* ¶ 12.)

Video of the incident reveals that Defendant approached Plaintiff by himself, a physical altercation between the parties immediately ensued, and within about twenty seconds, Defendant slammed Plaintiff to the floor. (Dkt. 122-12.) The video also shows that a second correctional officer arrived at the scene almost immediately after Plaintiff was slammed to the ground, and shortly thereafter, other officers arrived. (*Id.*) The video reflects that less than three minutes after Plaintiff was slammed to the ground, Plaintiff stood up and walked out of the wing where he was housed, assisted and escorted by several correctional officers. (*Id.*) The video further shows that Plaintiff needed the assistance of the officers to walk, as he was unable to put weight on his right leg. (*Id.*)

Plaintiff stated in his sworn audio interview about the incident that he had asked Defendant about taking a shower and that Defendant responded that Plaintiff should discuss the matter with a sergeant. (Dkt. 122-6.) According to the recorded interview, Defendant uttered a profanity toward Plaintiff, and Plaintiff uttered back a profanity. (*Id.*) Reportedly, Defendant then requested that Plaintiff's cell door be opened. (*Id.*) Plaintiff stated that when the door opened, he knew he could not defend himself because he was much smaller than Defendant. (*Id.*) Thus, Plaintiff stated, he decided to exit the cell to be seen on camera. (*Id.*) According to the interview, the parties tussled for a few seconds, and Defendant then slammed Plaintiff to the ground. (*Id.*)

Plaintiff stated that once on the ground, he was shackled and handcuffed. (*Id.*) Plaintiff told the officers, "I'm good. I'm good," and wanted to return to his cell. (*Id.*) Captain Brooks told Plaintiff that Plaintiff would need to be seen by medical staff because there was a use of force. (*Id.*) Plaintiff reported that after trying to take his first step, he realized that something was wrong with his leg. (*Id.*) The interview indicates that Plaintiff had to hop to the shower facility and was brought to the medical unit in a wheelchair. (*Id.*)

Plaintiff alleges that he "suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and aggravation of a previously existing condition" because of the incident. (Dkt. 51 ¶ 43, 49, 54.) Accordingly, Plaintiff brings three counts against Defendant: assault and battery not maliciously or in bad faith (count one), assault and battery maliciously and in bad faith (count two), and cruel and unusual punishment under 42 U.S.C. § 1983 for using unnecessary physical force against Plaintiff and for failing to provide him with immediate medical care in deliberate indifference to his constitutional rights (count three). (Dkt. 51 ¶¶ 38–54.)

## APPLICABLE STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment must "cit[e] to

particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" to support its position that it is entitled to summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials" when resolving the motion. Fed. R. Civ. P. 56(c)(3); *see HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) ("This rule was implemented so that a court may decide a motion for summary judgment without undertaking an independent search of the record." (quotation omitted)).

A factual dispute is "genuine" only if "a reasonable [factfinder] could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record showing a lack of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that no evidence supports the non-moving party's case, the burden then shifts to the non-moving party to show that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *see also HRCC*, 703 F. App'x at 816–17 ("Presenting arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court." (alteration adopted) (quoting *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990))). In determining whether a genuine dispute of material fact exists, the court must view the evidence and draw all factual inferences in the light most favorable to the non-moving party and must resolve any reasonable doubts in that party's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). The court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Summary judgment should be granted only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non[-]moving party." *Matsushita*, 475 U.S. at 587.

## ANALYSIS

The court first discusses the section 1983 count. It then turns to the counts for assault and battery.

1. **Section 1983**

Defendant is entitled to summary judgment on the section 1983 claim in count three that he failed to provide immediate medical care. A claim of deliberate indifference in failing to provide immediate medical assistance requires three elements:

"(1) a serious medical need[,] (2) the defendant['s] deliberate indifference to that need[,] and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).

Here, the record establishes that several officers responded to the scene after Plaintiff was on the ground and after Officer Pollaro had started to assist with restraining Plaintiff. The officers escorted Plaintiff to the showers, a secure area. Once Plaintiff arrived in the showers, Captain Brooks and the medical staff were informed of the use of force. Captain Brooks took charge of the situation and began to assist Plaintiff to the medical unit to treat his injuries. When Plaintiff informed Captain Brooks that he was unable to walk, Captain Brooks called for a wheelchair.

Plaintiff has failed to present any evidence that Defendant in any manner delayed Plaintiff's medical treatment. Because a reasonable factfinder could not conclude that Defendant was deliberately indifferent in failing to provide assistance to Plaintiff's medical needs, the court grants the motion for summary judgment regarding the section 1983 claim in count three that Defendant failed to provide medical care.

Plaintiff's other section 1983 claim against Defendant involves using unnecessary physical force against Plaintiff that allegedly constituted cruel and unusual punishment in violation of the Eighth Amendment. To demonstrate such a constitutional violation, Plaintiff must satisfy subjective and objective requirements: (1) the force was sadistically and maliciously applied for the very purpose of causing harm (the subjective requirement) and (2) more than a de minimis injury resulted that

comprises a constitutional violation (the objective requirement). *Johnson v. Breeden*, 280 F. 3d 1308, 1321 (11th Cir. 2002).

Plaintiff has presented evidence that Defendant applied force against him sadistically or maliciously with the intent to cause harm. In violation of prison rules and procedure, Defendant requested that Plaintiff's cell door be opened without restraining Plaintiff and without having another officer present. Defendant testified at his deposition that he could not specifically recall his intent when he requested that the cell door be opened. (Dkt. 131 at 51.) However, Defendant acknowledged that he violated prison rules and procedures requiring that two officers be present and that the inmate be restrained before being removed from the cell. (*Id.* at 45, 52.) Defendant also acknowledged that he and Plaintiff were involved in a physical altercation. (*Id.* at 58–59.)

Plaintiff has supplied evidence that the only reason Defendant requested that the door be opened was to initiate a physical confrontation with Plaintiff. Defendant maintains that Plaintiff's "aggression and noncompliance caused the need for force, substantially outweighing the effect of [Defendant]'s mistake." (Dkt. 132 at 9.) He further asserts that Plaintiff posed a significant risk of escape and a threat to the safety of staff and inmates, that "the force [he] used was proportionate to the threat Plaintiff posed," and that he "did what he could to temper the severity of the force used." (*Id.* at 13–14.) However, Defendant admitted that without justification or explanation, he requested that Plaintiff's cell be opened without having a second officer present and

without applying hand restraints, in violation of prison rules and procedures. Further, Plaintiff has presented evidence that he only exited the cell because he feared Defendant and wanted to be in the camera's view. The record supports that a physical altercation ensued and that Plaintiff suffered significant injuries as a result.

Moreover, there is no evidence that Plaintiff presented an escape risk or a threat to the safety of inmates and staff. As a result of the attack, the Office of the Inspector General for the Florida Department of Corrections determined that Defendant willfully violated several rules and regulations of the Florida Department of Corrections. (Dkt. 122-1 at 24.) The Inspector General also concluded that Defendant intentionally and knowingly opened the cell door and violated multiple rules with the intent of engaging in a fight with Plaintiff. (*Id.* at 24–25.) According to the Inspector General, Defendant "broke multiple procedures with the intent of causing a situation that would most likely necessitate the use of physical force." (*Id.* at 25.) Defendant testified that he chose not to dispute the violations administratively and instead quit his position. (Dkt. 131 at 48.)

Evidence shows that before Defendant opened Plaintiff's door, Plaintiff was locked in his cell such that no force was necessary. Captain Brooks concluded that "improper force was utilized." (Dkt. 122-11 at 7.) Captain Brooks also concluded that Defendant's actions violated prison policies because he retaliated in response to an inmate's statements, engaged in a physical altercation which could have been avoided had he not opened the door by himself, failed to use force as a last resort, failed to use

the minimal force necessary under the circumstances, and failed to use the required alternatives to force: de-escalation and crisis intervention techniques. (*Id.* at 36–37.)

Consequently, the evidence viewed in the light most favorable to Plaintiff demonstrates a genuine issue of fact as to whether Defendant's use of force was sadistically and maliciously applied for the very purpose of causing harm to Plaintiff. Because a rational trier of fact could find a constitution violation on the part of Defendant with regard to his use of force against Plaintiff, Defendant is not entitled to summary judgement on the section 1983 claim involving the use of force.

### 2. Assault and Battery

Count one alleges assault and battery not maliciously or in bad faith, whereas count two alleges assault and battery maliciously and in bad faith. (Dkt. 51 ¶¶ 38–49.) Plaintiff represents to the court that he "does not oppose Defendant's motion as to" count one. (Dkt. 142 at 16.) Given Plaintiff's abandonment of the count, the court grants the motion as to count one. *See Jarvis v. City of Daytona Beach*, 754 F. Supp. 3d 1197, 1230 n.5 (M.D. Fla. 2024) ("[W]hen a plaintiff abandons a claim at the summary judgment stage, the moving defendant may be entitled to summary judgment as to th[e] claim[.]").

Regarding count two, Florida law defines an assault as "any intentional, unlawful offer of corporeal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the

attempt if not prevented." *Colony Ins. Co. v. Barnes*, 189 Fed. App'x 941, 943 (11th Cir. 2006) (emphasis omitted) (quoting *Winn & Lovett Grocery Co. v. Archer*, 171 So. 214, 217 (Fla. 1936)). Florida law defines a battery as "the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Id*. (emphasis omitted) (quoting *Paul v. Holbrook*, 696 So. 2d 1311, 1312 (Fla. Dist. Ct. App. 1997)).

Defendant argues, (*see* Dkt. 132 at 15–20), that he is protected from liability for count two by sovereign immunity under section 768.28(9)(a), Florida Statutes, which states:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

*Id.* As the statute makes clear, there are exceptions to the immunity it provides. *Id.* "Those exceptions . . . apply when an officer acted: (1) 'in bad faith,' (2) 'with malicious purpose,' or (3) 'in a manner exhibiting wanton and willful disregard of human rights [or] safety.'" *Coleman v. Hillsborough County*, 41 F.4th 1319, 1325 (11th Cir. 2022) (quoting *Furtado v. Yun Chung Law*, 51 So. 3d 1269, 1276–77 (Fla. Dist. Ct. App. 2011)). Under Florida law, "in bad faith" and "with malicious purpose" are synonymous, and "Florida courts have equated bad faith with the actual malice standard." *Id*. (quotation omitted). "The 'actual malice' and 'malicious purpose'

exceptions apply when the conduct was committed with ill will, hatred, spite, or an evil intent." *Id*. (quotation omitted).  As for the other exception, wanton and willful disregard, the Eleventh Circuit has explained:

> Willful and wanton conduct is generally something more than ordinary negligence but less than deliberate conduct.  Most definitions of willful or wanton conduct require that it appear that the defendant had knowledge of existing conditions, was conscious from such knowledge that injury would likely or probably result from his conduct, and with reckless indifference to the consequences consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result.

*Butler v. Gualtieri*, 41 F.4th 1329, 1337 (11th Cir. 2022) (quoting *Lemay v. Kondrk*, 923 So. 2d 1188, 1192 (Fla. Dist. Ct. App. 2006)).

Here, Defendant was an officer of the Department of Corrections at the time of the incident.  (Dkt. 131 at 5.)   In count two, Plaintiff alleges that Defendant's acts "were committed in bad faith and with malicious purpose" and "were an intentional, reckless, unwarranted use of physical force in wanton disregard and deliberate indifference to . . . Plaintiff's safety and substantial rights."   (Dkt. 51 ¶¶ 46–47.) Defendant admitted to Plaintiff's request for admission that his "conduct was not malicious or in bad faith."  (Dkt. 131 at 7.)  As a result, Defendant contends that the admission is "conclusively established" and that "summary judgment may be based on [the] admitted matter." (Dkt. 132 at 17.) However, "an admission made pursuant to Federal Rule of Civil Procedure 36 binds the party who made it, . . . not . . . the party who requested it." *Ru Lin v. Gonzales*, 190 F. App'x 301, 307 (4th Cir. 2006). Under the circumstances of this case, there remain jury issues as to whether Defendant

committed assault or battery on Plaintiff and whether Defendant acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights or safety.

Defendant also argues that under section 776.012, Florida Statutes, he is entitled to "self-defense immunity." (Dkt. 132 at 20–22.) This statute provides:

> A person is justified in using or threatening to use force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force. A person who uses or threatens to use force . . . does not have a duty to retreat before using or threatening to use such force.

Fla. Stat. § 776.012(1). Relatedly, section 776.032 provides that a "person who uses . . . force as permitted in [section 776.012] . . . is justified in such conduct and is immune from . . . civil action for the use . . . of such force." Fla. Stat. § 776.032(1). "The analysis for Florida self-defense immunity tracks the analysis under [section] 1983." *Gregory v. Miami-Dade County*, 719 F. App'x 859, 870 (11th Cir. 2017).

Here, genuine issues of material fact as to whether Plaintiff made any threatening move and as to whether Defendant reasonably believed the use of force was necessary preclude summary judgment based on self-defense immunity. *See id.* ("[B]ecause there remains a jury issue as to whether [the plaintiff] made a threatening move and as to whether [the officer] reasonably believed the use of deadly force was necessary, self-defense immunity does not apply, and summary judgment was not appropriate on [the] state[-]law battery claim."). Further, because self-defense issues remain for the jury to decide, the court denies Defendant's request for a hearing on the

matter. (*See* Dkt. 132 at 22–23.) Defendant is not entitled to summary judgment on count two.

## CONCLUSION

Accordingly:

1. Defendant's motion (Dkt. 132) is **GRANTED in part and DENIED in part**.

2. The motion is **granted** as to Defendant's failure to provide immediate medical care to Plaintiff and as to count one. The motion is otherwise **denied**.

**ORDERED** in Orlando, Florida, on June 6, 2025.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record